J-A12028-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| DEANNA LYNN SAVINO | |
| Appellant | No. 1094 MDA 2020 |

Appeal from the Judgment of Sentence entered July 29, 2020
In the Court of Common Pleas of Dauphin County
Criminal Division at No: CP-22-CR-0004383-2018

BEFORE:  LAZARUS, J., STABILE, J., and MUSMANNO, J.

CONCURRING STATEMENT BY STABILE, J.:     **FILED SEPTEMBER 14, 2021**

I concur in the Majority decision because I believe this Court is bound by our Supreme Court's precedential decision in ***Commonwealth v. Livingstone***, 174 A.3d 609 (Pa. 2017), because the material facts in this case cannot be distinguished from those in ***Livingstone***.  I write separately to express my concern that ***Livingstone***'s adoption of an apparent *per se* rule that an officer's use of emergency lights will always defeat the finding of a mere encounter, sets a dangerous precedent both to the safety of our public and to law enforcement for the reasons expressed by Justice Mundy in her dissenting opinion in ***Livingstone***.  In that case, Justice Mundy stated:

> [T]he Majority's *per se* rule forces an officer to choose between two equally hazardous scenarios.  First, the officer keeps the emergency lights off, pulls up behind the vehicle, and approaches the driver in the dark.  Second, the officer declines to intervene at all, and keeps driving down the highway.  The first option would require an officer to ignore the obvious safety risks inherent in

traffic stops; likely frighten or alarm the driver, who may not recognize it is law enforcement as opposed to a stranger approaching; and needlessly fail to alert passing motorists of the presence of an emergency vehicle positioned on a busy interstate highway. Furthermore, it would be a dereliction of duty for an officer to keep driving past a car pulled over on the side of an interstate at night without, at a minimum, ascertaining whether those in the vehicle required help. I would not force law enforcement officials to make such a choice when striving to carry out their duties.

A police car's emergency lights serve multiple purposes. They can be used to signal a vehicle to pull over and stop, or they can signal traffic to clear a path and allow police vehicles to pass when they are responding to an emergency. In any circumstance, they no doubt serve to identify the vehicle as one being operated by law enforcement; the identification would certainly be met with relief by a stranded motorist who is being approached by a vehicle at night[.

*Id.* at 650 (Mundy, J., dissenting).

Alternatively, even if facts like those in *Livingstone* and the present case must consider the initial interaction as a seizure, I agree with Justice Baer's concurring and dissenting opinion in *Livingstone* that the seizure qualifies as an exception under the community caretaker doctrine. As Justice Baer observed:

Applying the test for the public servant exception to the Fourth Amendment adopted by the majority, I would hold that the specific and articulable facts (that Appellant's car was stopped on the shoulder of a highway, rather than a rest stop, gas station, or the like) warranted the minimal intrusion of Trooper Frantz slowly approaching in his vehicle and peering at Appellant to ensure her well-being. Specifically, I would find that these facts presented an objective basis for concluding that Appellant may have been in peril. Therefore, I respectfully dissent from the majority's ultimate conclusion that the evidence obtained as a result of the seizure should have been suppressed.

The majority concludes that because Appellant's hazard lights were not activated and there was no inclement weather at the time of the seizure, there were no outward signs of distress sufficient to warrant rendering aid in this instance. Majority Opinion, at 637–38.  Respectfully, I find this view myopic and, indeed, a disservice to the good citizens of Pennsylvania who may be in desperate need of available help, but will not receive it because of the majority's misguided attempt to protect their constitutional rights at the expense of their physical well-being.

Moreover, there is an additional peril at play here; the danger that another vehicle traveling at high speed will drift into the one parked on the shoulder of the highway, casing a catastrophic accident.  Indeed, the Commonwealth took this position at the suppression hearing, contending that Trooper Frantz was performing his public safety duty in trying to minimize the safety risk posed by Appellant's vehicle being parked on the berm of an interstate highway . . . .  Thus, in addition to having grounds for believing that Appellant may have needed assistance, Trooper Frantz had an objective basis to be concerned for the overall safety of the highway because a parked vehicle located on the shoulder of an interstate highway without hazard lights obviously presents a potential safety risk to other motorists.

*Id.* at 640-41 (Baer, J., concurring and dissenting).

To the above, I would simply add the common sense and obvious observation that road shoulders are not parking spaces.  Among their obvious uses, shoulders are incorporated into highway design for safety, highway maintenance and emergency use.[1]  I find it eminently reasonable to assume

---

[1] **See** Transportation Research Board, *Foreword* to *Shoulder Geometrics and Use Guidelines* NCHRP Report 254 (1982): "Shoulders are an important element of a highway system.  Well-designed and maintained shoulders are essential for safe traffic operations and serve as lateral structural support for the traveled way.  Shoulders provide space for emergency stops, recovery space for errant vehicles, clearance to signs and guardrails, space for maintenance operations, and other functions."

that a motorist who finds it necessary to use the shoulder of a highway may very well be experiencing some immediate trouble to necessitate the use of a highway shoulder, as opposed to a rest stop, gas station, or designated pull off area, to justify a constitutional minimally intrusive stop by an officer to inquire into the motorist's safety.  Fashioning a rule that *per se* prohibits an officer from engaging in safety measures, *i.e.*, activating emergency lights, to merely inquire as to whether a motorist parked in a highway shoulder requires assistance, strains the balance between an individual's constitutional rights and society's needs for protection by able law enforcement.